United States District Court
Southern District of Texas

**ENTERED**

April 22, 2020

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| HELEN  GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:20-CV-37 |
| | § | |
| HSBC BANK USA, N.A.; cp HSBC USA, | § | |
| INC.; cp HSBC NORTH AMERICA | § | |
| HOLDINGS, INC.; cp HSBC HOLDINGS | § | |
| PLC,, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER & OPINION</u>

The Court now considers the motion to dismiss[1] filed by HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust, and for the registered holder of ACE Securities Corp. Home Equity Loan Trust, Series 2007-ASAP2, Asset Backed Pass-Through Certificates ("Defendant HSBC"); PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC ("Defendant PHH"); and Ocwen Loan Servicing LLC ("Defendant Ocwen") (hereafter, collectively "Defendants"). Helen Gonzales ("Plaintiff"), who is representing herself *pro se*, has not filed a response and the time for doing so has passed. After duly considering the motion, record, and relevant authorities, the Court **GRANTS** Defendants' motion.

---

[1] Dkt. No. 5. Defendant David R. Karle has not participated in the case and did not participate in the filing of the instant motion to dismiss. As explained elsewhere in this Order, Defendants maintain that David R. Karle is improperly joined.

## I.   BACKGROUND

This is a foreclosure case. On February 23, 2007, Plaintiff executed a deed of trust (hereafter, "loan"), which was secured against a property located at 2320 Fairmont Avenue, McAllen, Texas 78504 (hereafter, "Subject Property").[2]   Plaintiff maintains that the loan is currently held by Defendant HSBC.[3]

Plaintiff provides that she made payments on the loan for eleven years, but "due to some unexpected circumstances, [she] stayed behind on a few payments."[4] From here, Plaintiff's timeline is nearly indiscernible to the Court. It appears that sometime in early 2018, Plaintiff and her husband, Alvin Gonzales, applied for a loan modification with the holder of the loan at the time, Defendant Ocwen.[5] Plaintiff's loan modification was approved, although the date on which it was approved is unclear.[6] Plaintiff alleges that on July 23, 2018, Defendant Ocwen provided Plaintiff with an opportunity to appeal the terms of the loan modification.[7] Plaintiff appealed the loan modification on August 22, 2018 in an attempt to receive more favorable terms.[8] Plaintiff states that after she submitted her application to appeal the loan modification, Defendant Ocwen responded on September 18, 2018 indicating that Plaintiff's application was complete.[9]

---

[2] Dkt. No. 1-5 at 4, ¶ A. The deed of trust is not on file with the Court.
[3] *Id.* There is no indication on the record of what entity Plaintiff initially executed the deed of trust with, or if there has been any assignment of the deed of trust.
[4] *Id.* at 5, ¶ G.
[5] *Id.* at 12 (Plaintiff's letter to Defendant Ocwen regarding the loan modification).
[6] Plaintiff and Defendants both refer to the loan modification as having been approved. Defendants state that "Plaintiff alleges she applied for loan modification on February 5, 2018, which was subsequently approved, and appealed on August 22, 2018. . ." Dkt. No. 5 at 2. Plaintiff actually states that she "received a call" regarding her loan modification from Defendants on February 5, 2018, informing Plaintiff that her payments would be higher under the loan modification than they were originally. Dkt. No. 1-5 at 45. It is unclear on what exact day Plaintiff applied for a loan modification.
[7] Dkt. No. 1-5 at 45 (Plaintiff's Affidavit in support of temporary restraining order). Plaintiff attaches a letter from Defendant Ocwen which provides Plaintiff with an opportunity to appeal the loan modification. *Id.* at 15–18. Plaintiff claims in a separate affidavit that this letter was dated July 23, 2018. *Id.* at 45. However, there is no date on the letter. Defendants do not contest Plaintiff's alleged date.
[8] *See id.* at 45.
[9] *Id.* at 4, ¶ B.

What occurred after this is a mystery to the Court, as neither party provides any explanation. Plaintiff attaches to her complaint one Notice of Acceleration of Maturity and two Notices of Substitute Trustee Sale (hereafter, "notices of foreclosure sale"), which appear to be attached out of order. First, Plaintiff attaches a notice of maturity and a notice of a foreclosure sale set to take place on January 7, 2020.[10] Therein, Power Default Services, Inc., a bill collector acting on behalf of Defendant Ocwen, notifies Plaintiff of the acceleration of the loan and upcoming foreclosure sale. The document is three pages long.[11] The second page states that the sale is to take place on January 7, 2020, but the third page is dated November 13, 2018 and references a foreclosure sale set to take place January 2, 2019.[12] Plaintiff also attaches a second notice of a foreclosure sale set to take place on January 2, 2019.[13] Plaintiff provides only two pages of this document, despite the fact that both pages indicate the original document was three pages.[14] This second notice of foreclosure sale is not dated.[15]

From this limited information, the Court can only discern that Defendant Ocwen planned to foreclose on the Subject Property on two separate occasions. On November 13, 2018, Defendant Ocwen sent Plaintiff a notice of acceleration and notice of a foreclosure sale set to take place on January 2, 2019.[16] On an unknown date, Defendant Ocwen sent Plaintiff notice of a foreclosure sale set to take place on January 7, 2020.[17] It is unclear what occurred between Plaintiff's attempt to appeal the terms of the loan modification in August 2018 and the subsequent notices of acceleration and foreclosure sales that were set to take place in January 2019 and January 2020.

---

[10] *Id.* at 36.
[11] *Id.* at 35–37.
[12] *Id.* at 37.
[13] *Id.* at 39–40.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 37, 39–40.
[17] *Id.* at 36.

Plaintiff also claims that sometime after she fell behind on the loan payments, "Defendant's [*sic*] agents. . .trespassed and entered Plaintiff's house by destroying items from her home" and "intimidated her by posting cards and notices in her door, while simultaneously working with [Plaintiff] on a mortgage modification. . ."[18] Plaintiff claims she has "suffered a loss of $25,700.00 due to "Defendant's [*sic*] burglary of her habitat property."[19] Plaintiff does not clarify whether she makes these allegations against Defendant Ocwen, whom she was dealing with regarding the loan modification, or all Defendants. Plaintiff also does not clarify the date on which this alleged harassment occurred.[20]

On June 6, 2020—one day before the second scheduled foreclosure sale—Plaintiff filed a petition in state court. Plaintiff sought, and was granted, a temporary restraining order to prevent the foreclosure sale.[21] While it is again unclear from the face of Plaintiff's state court petition (hereafter, "complaint"), Plaintiff appears to bring claims against all Defendants and Substitute Trustee David R. Karle for (1) breach of contract, presumably based on a section of Plaintiff's complaint titled "The Breach Letter;" (2) violations of the Texas Property Code; (3) a violation of the Real Estate Settlement Procedures Act ("RESPA"); and (4) a violation of the Home Affordable Modification Program ("HAMP").[22] Plaintiff seeks damages, pre-judgment and post-judgment interest, injunctive relief, and attorneys' fees.[23]

---

[18] *Id.* at 5, ¶ I. Plaintiff attaches a letter sent to Defendant Ocwen on October 18, 2019, wherein Plaintiff demands $25,700.00 from Defendant Ocwen for alleged vandalism of her home while she was out of town. *Id.* at 21–22. Plaintiff sent the same letter to Defendant PHH upon belief that Defendant PHH had taken over her loan as Defendant Ocwen's successor. *Id.* at 23–24.

[19] *Id.*

[20] *Id.* Plaintiff only provides letters notifying Defendant Ocwen and Defendant PHH of the damage. The letters are dated October 18, 2019.

[21] Dkt. No. 1-7 at 2–4 (temporary restraining order entered on January 6, 2020).

[22] Dkt. No. 1-5 at 7. Plaintiff does not explicitly allege violations RESPA. However, Plaintiff refers to the treatment she received from Defendants as "dual tracking." *Id.* at 5, ¶ I. Plaintiff also does not explicitly allege violations of HAMP. The Court's interpretation of this language is discussed elsewhere in this Order.

[23] *Id.* at 7–8.

On February 6, 2020, Defendants removed to federal court on the basis of diversity jurisdiction.[24] The Court ordered the parties to appear for an initial pretrial and scheduling conference on March 10, 2020, and also ordered the parties to confer and prepare a joint discovery/case management plan in preparation for the conference.[25] On February 25, 2020, Defendants filed the instant motion to dismiss.[26] Plaintiff failed to respond. On March 2, 2020, Defendants filed a "[Rule] 26(f) Report," informing the Court that Plaintiff did not confer with Defendants in preparation for the parties' March 10, 2020 initial pretrial and scheduling conference.[27] In light of Plaintiff's refusal to confer with Defendants and Defendants' pending motion to dismiss, the Court cancelled the March 10, 2020 conference.[28]

The Court now turns to its analysis and begins with Defendants' argument regarding improper joinder of the Substitute Trustee, in order to determine whether it has jurisdiction over Defendants' motion to dismiss.

## II.   IMPROPER JOINDER

In the notice of removal, Defendants maintain that the amount in controversy requirement is met and that all properly joined parties are diverse, but note that Plaintiff named Substitute Trustee David R. Karle as a Defendant in her complaint.[29] Defendants admit that Plaintiff and

---

[24] Dkt. No. 1. Defendants maintain that the amount in controversy exceeds $75,000, arguing that "[w]hen the right to property is at issue, courts look to the value of the property to determine whether the minimum amount in controversy has been met for jurisdictional purposes." *Id.* at 8, ¶ 20. Defendants attach documents from the Hidalgo County Appraisal District evidencing that the Subject Property is valued at $190,069.00. Dkt. No. 1-10. Defendants also provide that Plaintiff is a citizen of Texas, Defendant HSBC is a citizen of Virginia, and Defendant PHH is a citizen of New Jersey. Dkt. No. 1 at 6–7, ¶¶ 15–18. Defendants do not provide the citizenship of Defendant Ocwen. Defendants also note that Plaintiff named substitute trustee David R. Karle as a Defendant in her state court petition. *Id.* at 3, ¶ A(9). As the Court discusses elsewhere in this Order, Defendants admit that Mr. Karle is a citizen of Texas, but argue that "his citizenship should be disregarded for diversity purposes because Plaintiff improperly joined the Substitute Trustee to this lawsuit." *Id.*
[25] Dkt. No. 4.
[26] Dkt. No. 5.
[27] Dkt. No. 6 at 1, ¶ 1; Dkt. No. 7 at 1, ¶ 1.
[28] Dkt. No. 8.
[29] Dkt. No. 1 at 3, ¶ A(9). While it has not been challenged by Plaintiff, the Court agrees with Defendants that the amount in controversy requirement has been met, as the Subject Property is valued at more than $75,000.00.

Mr. Karle are both citizens of Texas, but argue that Mr. Karle's "citizenship should be disregarded for diversity purposes because Plaintiff improperly joined the Substitute Trustee to this lawsuit."[30]

The record provides that Plaintiff is a citizen of Texas, Defendant HSBC is a citizen of Virginia, and Defendant PHH is a citizen of New Jersey.[31] Defendants do not provide the citizenship of Defendant Ocwen and prior to the motion to dismiss, did not refer to Defendant Ocwen as an individual Defendant in the case. This is likely due to the fact that while Plaintiff named Defendant Ocwen and Defendant PHH as individual Defendants in her complaint, Defendant Ocwen acquired Defendant PHH in October 2018[32] and Defendant PHH appears in the lawsuit as "PHH Mortgage Corporation, successor by merger to [Defendant Ocwen]." Defendants provide in their corporate disclosure statement that "Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services is a wholly owned subsidiary of PHH Corporation, which is a wholly owned subsidiary of Ocwen Financial Corporation, a publicly held company."[33] Thus, the Court will consider Defendant PHH's citizenship for the purposes of diversity jurisdiction, but notes for the record that Defendant Ocwen is also properly diverse.[34] However, because Mr. Karle is a citizen of Texas and is not diverse from Plaintiff, whether he is properly joined as Substitute Trustee affects diversity jurisdiction here.

---

[30] *Id.*

[31] *Id.* at 6–7, ¶¶ 15–18.

[32] *See Ocwen Completes the Acquisition of PHH Corporation*, Press Release, October 4, 2018; http://www.ocwen.com/PHHAnnouncement.

[33] Dkt. No. 3 at 1.

[34] It is well settled that for diversity purposes, Defendant Ocwen Loan Servicing LLC is a citizen of Delaware, Florida, and the U.S. Virgin Islands. *See* Case No. 7:18-cv-392, *Gutierrez v. Ocwen Loan Servicing, LLC et al*, Dkt. No. 15 at 4 (holding that Ocwen Loan Servicing, LLC was diverse from the plaintiff, who was a citizen of Texas); *see also Hockessin Holdings, Inc. v. Ocwen Loan Servicing, LLC*, No. 4:15CV704, 2016 WL 1046270, at *2 (E.D. Tex. Mar. 16, 2016); *Avila v. Ocwen Loan Servicing, LLC*, No. SA-14-CV-807-XR, 2014 WL 5795495, at *2 (W.D. Tex. Nov. 6, 2014).

The citizenship of a non-diverse party is properly ignored for jurisdiction purposes if the claims against him/her cannot withstand Rule 12(b)(6) scrutiny.[35] Plaintiff's claims against Mr. Karle cannot withstand Rule 12(b)(6) scrutiny because Plaintiff fails to sufficiently allege *any* claim against the Substitute Trustee. The Court finds Mr. Karle is an improperly joined nominal party. Thus, the Court **DISMISSES WITHOUT PREJUDICE** David R. Karle from this action.

As such, all remaining parties are properly diverse and the Court finds that the amount in controversy requirement is met.[36] The Court has jurisdiction over the case. Accordingly, the Court now turns to Defendants' motion to dismiss.

### III.   MOTION TO DISMISS

Defendants argue that pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Plaintiff fails to state a claim upon which relief can be granted.[37] Plaintiff failed to respond to the motion to dismiss, and thus, under the Local Rules, is unopposed to the dismissal of this action. This alone is not reason to dismiss. Nonetheless, the Court agrees with Defendants.

#### a.   Legal Standard

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[38] Although this does not require extensive detail, the pleading must contain "more than labels and conclusions" and go beyond "a formulaic recitation of the elements."[39] The Court regards all well-pled facts as true; however conclusory allegations are not

---

[35] *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016).
[36] As the Court has already noted, Defendants maintain that the amount in controversy exceeds $75,000, arguing that "[w]hen the right to property is at issue, courts look to the value of the property to determine whether the minimum amount in controversy has been met for jurisdictional purposes." *Id.* at 8, ¶ 20. Defendants attach documents from the Hidalgo County Appraisal District evidencing that the Subject Property is valued at $190,069.00. Dkt. No. 1-10. The Court agrees with Defendants that the amount in controversy exceeds $75,000.00.
[37] *See generally* Dkt. No. 5.
[38] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007), cert. denied, 552 U.S. 1182 (2008)) (internal quotations omitted).
[39] *See Twombly*, 550 U.S. at 555.

entitled to the same presumption of truth.[40] These well-pled facts are viewed in the light most favorable to the plaintiff.[41] The Court may dismiss a complaint if the complaint fails to state a claim upon which relief can be granted, or if the pleading does not assert enough facts to support a plausible claim for relief.[42]

### b. Legal Analysis

The Court first notes that to the extent Plaintiff seeks to bring claims against Defendants for burglary and trespass into her home, conduct she claims caused $25,700.00 in damages, the Court declines to consider these allegations. Plaintiff presents no facts suggesting that Defendants' agents broke into Plaintiff's home and conclusory allegations that Defendants committed burglary and trespass are not entitled to a presumption of truth.[43] The Court considers these accusations to be wholly unrelated to the foreclosure of Plaintiff's property, which is the subject of this lawsuit. The Court now turns to Plaintiff's discernable claims.

### A. The Breach Letter

Plaintiff first alleges that Defendants breached the terms of Plaintiff's deed of trust by failing to provide Plaintiff with a breach or demand letter informing Plaintiff that her loan was in default before accelerating the loan and proceeding with foreclosure.[44] The Court construes this section as alleging a breach of contract claim. Defendants do not interpret Plaintiff's "Breach Letter" claim as such, but rather argue that "Plaintiff fails to plead any statu[t]es, regulations, torts, or other provisions of law which state a right to relief relating to her allegation that she did not receive notices of default."[45]

---

[40] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).
[41] *Id.*
[42] *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.
[43] *R2 Invs. LDC*, 401 F.3d at 642.
[44] Dkt. No. 1-5 at 7.
[45] Dkt. No. 5 at 5.

Plaintiff's complaint fails to state a breach of contract claim upon which relief can be granted. A breach of contract claim has the following essential elements in Texas: "(1) the existence of a valid contract; (2) performance by plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by plaintiff as a result of the breach."[46]

Here, neither Plaintiff nor Defendants provide Plaintiff's deed of trust as evidence of the terms of their contract. Nonetheless, Plaintiff fails to satisfy the second element, as she concedes to failing to perform under the terms of the contract by failing to make the necessary payments. For that reason alone, Plaintiff's claim is not cognizable. Plaintiff's complaint additionally fails to satisfy the third element. The Fifth Circuit has explained "a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached."[47] The complaint states generally that Texas deeds of trust contain a clause requiring notice but does not allege Plaintiff's own deed of trust contains such a clause or that Defendants breached any specific clause contained in the deed of trust.[48] Finally, Plaintiff's complaint fails to satisfy the fourth element. Plaintiff only alleges she sustained "actual and exemplary damages, such [as] Plaintiff's kitchen cabinets, fire alarms, ceilings, attics, doors and to include the removal of items such as the whole carpets that covers Plaintiff's house. . ."[49] These damages are not damages sustained by Plaintiff as a result of the alleged breach.

For these reasons, Plaintiff's complaint fails to allege facts necessary to fulfill the elements of a breach of contract claim. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's "Breach Letter" claim.

---

[46] *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).
[47] *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 238 (5th Cir. 2014).
[48] Dkt. No. 1-5 at 7.
[49] *Id.* at 8.

*B.  Texas Property Code Claims*

In the complaint, Plaintiff alleges that Defendants failed to send her a notice of default and intent to accelerate in compliance with the Texas Property Code.[50] Specifically, Plaintiff alleges that Defendants did not comply with the portion of the Texas Property Code which requires the servicer "to send the borrower a notice and intent to accelerate by certified mail first that provides at least 20 days to cure the default before notice of sale can be given."[51] Plaintiff maintains that "[t]he notice must be sent to <u>the borrower's last known address</u> and must include the amount due and the date it must be paid."[52] Plaintiff does not cite to a specific section of the Texas Property Code. Plaintiff also does not clarify whether Defendants sent her a notice of default at all, or if Defendants sent her a notice that was not compliant with the Texas Property Code.

The Court interprets Plaintiff's claim to allege a violation of Texas Property Code Section 51.002, which provides: "the mortgage servicer of the debt shall serve a debtor in default under a deed of trust . . . on real property used as the debtor's residence with written notice . . . that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of sale can be given."[53] Accordingly, the Court will consider whether Plaintiff states a claim upon which relief can be granted as to Section 51.002 of the Texas Property Code.

Defendants argue that Section 51.002 of the Texas Property Code does not create a cause of action under which Plaintiff can state a claim.[54] Moreover, Defendants argue that to the extent

---

[50] *Id.* at 7.
[51] *Id.*
[52] *Id.*
[53] Tex. Prop. Code §51.002(d) (West).
[54] Dkt. No. 5 at 5 (citing *Carey v. Wells Fargo,* No. CV H-15-1666, 2016 WL 4246997, at *3 (S.D. Tex. Aug. 11, 2016)).

Plaintiff pleads a wrongful foreclosure claim, "Plaintiff has not pled a single fact that would support a claim for wrongful foreclosure."[55]

Defendants are correct that there is no claim under Section 51.002 where no foreclosure has taken place.[56] Because Plaintiff's complaint does not indicate a foreclosure sale has taken place, her complaint fails to state a claim under Section 51.002. Furthermore, courts have indeed found that Section 51.002 does not provide *any* independent cause of action because it does not "contain its own enforcement mechanism."[57] Rather, "federal courts have construed claims under Section 51.002 to be wrongful foreclosure claims."[58]

There can be no wrongful foreclosure when no foreclosure has taken place.[59] Accordingly, Plaintiff's Section 51.002 claim fails even if it is construed as a wrongful foreclosure claim, because no foreclosure sale occurred.[60] Consequently, the Court **DISMISSES WITH PREJUDICE** Plaintiff's Texas Property Code claim.

## C.  RESPA

Plaintiff does not explicitly allege that Defendants violated RESPA. However, Plaintiff refers to the treatment she received from Defendants as "dual tracking."[61] Based on this language and the facts pled by Plaintiff, the Court interprets this as an attempt by Plaintiff to bring a claim against Defendants for a violation of Section 1024.41 of RESPA, which provides that a

---

[55] *Id.* at 6.
[56] *See Suarez v. Ocwen Loan Servicing, LLC*, 2015 WL 7076674, at *3 (W.D. Tex. Nov. 12, 2015) ("Failure to comply with Texas Property Code §§ 51.002 (b) and (d) does not provide Plaintiff with a cause of action prior to an actual foreclosure sale.") (citing *Crucci v. Seterus, Inc.*, 2013 WL 6146040, at *3 (W.D. Tex. Nov. 21, 2013)).
[57] *See e.g.*, *Ashton v. BAC Home Loans Servicing, L.P.*, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013).
[58] *Id.* (citing *Hill v. Wells Fargo Bank, N.A.*, 2012 WL 2065377, at *7–8 (S.D. Tex. June 6, 2012)); *Bittinger v. Wells Fargo Bank NA*, 2011 WL 3568206, at *4–5 (S.D. Tex. Aug. 15, 2011)).
[59] *Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 406 (5th Cir. 2017) (citing *James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 446 (5th Cir. 2013)) ("A party cannot 'state a viable claim for wrongful foreclosure' if the party 'never lost possession of the Property.'"); s*ee Manriquez v. Wells Fargo Bank,*  N.A., No. 7:18-CV-00012, 2018 U.S. Dist. LEXIS 44207, at *5 (S.D. Tex. Mar. 19, 2018); *see also Biggers v. BAC Home Loans Servicing,* LP, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011); *Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011).
[60] *Foster*, 848 F.3d at 406.
[61] *See* Dkt. No. 1-5 at 5, ¶ I.

foreclosure sale shall be prohibited "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process. . ."[62] Under Section 1024.41(g), where the borrower has completed a loss mitigation application, "a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

> (1) [t]he servicer has sent the borrower a notice. . .that the borrower is not eligible for any loss mitigation option and the appeal process . . .is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) [t]he borrower rejects all loss mitigation options offered by the servicer; or (3) [t]he borrower fails to perform under an agreement on a loss mitigation option.[63]

Pursuant to Section 1024.41(h)(2), after offering a borrower a loan modification, a servicer need only provide the borrower fourteen days to appeal the terms of the loan modification.[64] Courts have referred to violations of Section 1024.41 as "dual tracking," referring to situations where loan servicers pursue foreclosure while simultaneously negotiating loan modifications with borrowers.[65]

Defendants argue that Plaintiff fails to state a claim under RESPA because she "neglects to state RESPA provides the basis for Plaintiff's claims," and fails to provide "any provisions of RESPA which offer Plaintiff a right to relief, or any damages caused by Defendant's violation of RESPA."[66] Defendants further argue that to the extent Plaintiff does intend to bring a RESPA claim, she "fails to assert facts sufficient to establish dual tracking occurred."[67] Defendants maintain that Plaintiff (1) fails to establish that she submitted a complete loan modification

---

[62] *See* 12 C.F.R. § 1024.41(g).
[63] *Id.*
[64] *Id.* at § 1024.41(h)(2).
[65] *Gresham v. Wells Fargo Bank*, N.A., 642 F. App'x 355, 359 (5th Cir. 2016) ("Dual tracking is the term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options.").
[66] Dkt. No. 5 at 4, ¶ 1.
[67] *Id.*

application prior to Defendants sending her a first notice of foreclosure; (2) Plaintiff's appeal of the loan modification agreement was untimely and thus cannot provide the basis for her RESPA claim; and (3) Plaintiff does not allege any actual damages resulting from the alleged "dual tracking," which is required to state a claim under Section 1024.41.[68]

As an initial matter, Defendants' arguments regarding the completion of Plaintiff's loan modification application and the untimeliness of Plaintiff's appeal are unpersuasive. First, Defendants argue that Plaintiff "fails to establish that she submitted a complete loan modification application prior to [Defendants'] first notice of foreclosure. . ."[69] However, Plaintiff does allege this exactly. Plaintiff states that after she appealed the loan modification on August 22, 2018, Defendant Ocwen responded on September 18, 2018 indicating that Plaintiff's application was complete.[70] Defendants admit that Plaintiff's loan modification request was approved sometime before she appealed its terms on August 22, 2018, suggesting that her application for a loan modification was completed prior to Defendant Ocwen sending the first notice of foreclosure on November 13, 2018.[71] Accordingly, Plaintiff does establish that she completed a loan modification application prior to receiving a notice of foreclosure. Thus, Defendants' argument in this regard is unpersuasive.

Second, Defendants allege that Plaintiff's appeal of the loan modification was untimely. Defendants note that Section 1024.41(h)(2) requires a servicer to provide a borrower at least fourteen days to appeal the terms of a loan modification offer.[72] Defendants maintain that because Plaintiff admits she submitted her appeal more than fourteen days after receiving the

---

[68] *Id.* at 4–5, ¶ 1.
[69] *Id.* at 5, ¶ 1.
[70] Dkt. No. 1-5 at 4, ¶ B.
[71] Dkt. No. 5 at 2.
[72] *Id.* at 5, ¶ 1 (citing 12 U.S.C. § 1024.41(h)(2)).

opportunity to appeal, her situation falls outside the protections contained in Section 1024.41.[73] However, based on the language of Section 1024.41(h)(2), servicers are free to provide borrowers with *more* than fourteen days to submit an appeal. Defendant Ocwen did just that when it provided Plaintiff an opportunity to appeal. Plaintiff attaches the letter sent to her by Defendant Ocwen providing her the right to appeal the loan modification option within "30 days from the date of [the letter] . . ."[74] Unsurprisingly, the portion of the letter provided by Plaintiff is not dated. Plaintiff maintains that she received the letter on July 23, 2018 and submitted the appeal on August 22, 2018.[75] Because Plaintiff appealed the loan modification within the thirty days allotted by Defendant Ocwen, the facts are sufficiently pled to survive Defendants' contention that Plaintiff's appeal of the loan modification was untimely.

   Although the Court is not persuaded by these arguments, the Court agrees with Defendants that Plaintiff fails to state a RESPA claim. Defendants are correct that to the extent Plaintiff brings a RESPA claim, it is poorly pled. More importantly however, Section 1024.4 is only enforceable via 12 U.S.C. 2605(f), which requires that the plaintiff suffer actual damages, or otherwise establish a pattern or practice of a defendant's dual tracking.[76] Plaintiff fails to plead damages sustained as a result of Defendants' alleged dual tracking in violation of RESPA. Plaintiff only alleges physical damage to her home, which cannot constitute damages sustained as a result of dual tracking. For this reason alone, Plaintiff cannot maintain a RESPA claim, to the extent she brings one.

---

[73] *See id.*
[74] Dkt. No. 1-5 at 14.
[75] *Id.* at 45 (Plaintiff's Affidavit in support of Temporary Restraining Order).
[76] *Mendoza v. Select Portfolio Servicing, Inc.*, No. 7:17-CV-00180, 2017 WL 4280778, at *4 (S.D. Tex. Sept. 27, 2017) (citing *Waites v. LLP Mortgage Ltd. & MGC Mortgage, Inc.*, 2015 WL 11120993, at *2 (N.D. Tex. June 19, 2015); *Hurd v. BAC Home Loan Serv., L.P.*, 880 F. Supp. 2d 747,768 (N.D. Tex. 2012); *Oden v. JPMorgan Chase Bank, N.A.*, 2012 WL 1610782 at *2 (S.D. Tex. May 8, 2012); *Akitunji v. Chase Home Finance*, L.L.C., 2011 WL 2470709 at *2 (S.D. Tex. June 20, 2011); *see also Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013).

Moreover, the facts pled by Plaintiff are insufficient to suggest Plaintiff was the victim of dual tracking. The record indicates that Plaintiff appealed the loan modification on August 22, 2018 and that she received a notice of acceleration and foreclosure sale on November 23, 2018.[77] Plaintiff does not provide any timeline for what occurred after she allegedly submitted her appeal on August 22, 2018. Plaintiff does not allege that her appeal was pending when she received notice of foreclosure. Rather, Plaintiff merely states that "[p]rior to any foreclosure" Defendants "intimidated her by posting cards and notices in her door, while simultaneously working with [Plaintiff] on a mortgage modification. . .."[78] Plaintiff does not clarify the dates on which she received these cards or notices, and does not allege that the cards or notices were notices of foreclosure received during Plaintiff's appeal process.

As such, the Court cannot hold that Plaintiff's convoluted timeline and one-line reference to "dual tracking" constitute a well-pled RESPA claim that survives a motion to dismiss. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's RESPA claim, to the extent she intends to assert one.

### D.  HAMP

Much like Plaintiff's RESPA claim, it is unclear to the Court whether Plaintiff brings a claim under HAMP. Plaintiff alleges in the complaint that Defendants have "refused to accept [Plaintiff's] request for Loan Modification Hamp Tier 2 and must follow certain standards when dealing with homeowners facing foreclosure such like Plaintiff [*sic*]."[79]

---

[77] Dkt. No. 1-5 at 45 (Plaintiff's Affidavit in support of temporary restraining order).
[78] *Id.* at 5, ¶ I.
[79] *Id.* at 6, ¶ N.

Courts have repeatedly found there is no private right of action under HAMP.[80] To the extent Plaintiff intends to do so, Plaintiff fails to state a claim under HAMP. Thus, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claim in relation to HAMP.

### E.   Injunctive Relief

Plaintiff requests a temporary injunction preventing foreclosure of the Subject Property.[81] Plaintiff states no cognizable claim. Injunctive relief requires the movant to establish, among other things, that there is a substantial likelihood of success on the merits.[82] Plaintiff has stated no viable cause of action; thus, injunctive relief is not warranted here. Consequently, the Court **DISMISSES WITH PREJUDICE** Plaintiff's request for injunctive relief.

### IV.   HOLDING

For the foregoing reasons, Defendants' motion to dismiss[83] is **GRANTED**. The Court hereby **DISMISSES WITH PREJUDICE** Plaintiff's entire action. Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 22nd day of April, 2020.

Micaela Alvarez
United States District Judge

---

[80] *See, e.g., Goffney v. Bank of Am., N.A.*, 897 F. Supp. 2d 520, 526 (S.D. Tex. 2012) (collecting cases); *Kiper v. BAC Home Loans Servicing*, LP, 884 F. Supp. 2d 561, 572-73 (S.D. Tex. 2012), aff'd sub nom. *Kiper v. BAC Home Loans Servicing*, L.P., 534 F. App'x 266 (5th Cir. 2013); *Emiabata v. Bank of N.Y. Mellon Tr.* Co. N.A., No. A-17-CV-1101-SS-ML, 2017 U.S. Dist. LEXIS 218413, at *7 (W.D. Tex. Nov. 30, 2017); *Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 U.S. Dist. LEXIS 65045, at *7-9 n.2 (S.D. Tex. June 20, 2011); *Godfrey v. Wells Fargo & Co.*, No. 5:16CV79-RWS-CMC, 2017 U.S. Dist. LEXIS 31187, at *19 (E.D. Tex. Jan. 9, 2017); *Geske v. Wells Fargo Bank, Nat'l. Ass'n*, No. 3:11-CV-3337-L, 2012 U.S. Dist. LEXIS 51500, 2012 WL 1231835, at *6 (N.D. Tex. Apr. 12, 2012) ("the vast majority of courts . . . have universally rejected these claims on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers").
[81] Dkt. No. 1-5 at 8, ¶ F.
[82] *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Ashton*, 2013 WL 3807756, at *7, n. 31 (denying motion for temporary injunction as moot after granting the defendant's motion to dismiss).
[83] Dkt. No. 5.

16 / 16